# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MARK ANTHONY ADELL,<br><br>                      Plaintiff,<br>v.<br><br>WARDEN GARY BOUGHTON,<br>JOLINDA WATERMAN, BETH<br>EDGE, K. RUNNING, M. BARTELS,<br>ELLEN RAY, and JANE DOES,<br><br>                      Defendants. | Case No. 17-CV-1434-JPS<br><br><br>**ORDER** |

Plaintiff, who is incarcerated at the Wisconsin Secure Program Facility ("WSPF"), filed a *pro se* complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. (Docket #1). This matter comes before the Court on Plaintiff's motion to proceed *in forma pauperis*. (Docket #2). The Court originally assessed Plaintiff an initial partial filing fee of $1.45. (Docket #5); 28 U.S.C. § 1915(b)(4). However, Plaintiff filed a motion to waive payment of the initial partial filing fee, arguing that he has insufficient funds in his trust account and that prison officials will not allow him to overdraft the account or take a legal loan to pay the fee. (Docket #7).

Although the records initially presented to the Court suggested that Plaintiff had the ability to pay an initial partial filing fee, the Court credits his representations in his motion that, in reality, he cannot. The Court therefore finds that Plaintiff does not have the assets or means to pay the initial partial filing fee originally assessed. Because the Prison Litigation Reform Act mandates that a prisoner will not be prohibited from bringing a civil action for the reason that he lacks the assets and means to pay an

initial partial filing fee, 28 U.S.C. § 1915(b)(4), Plaintiff will be granted a waiver of payment of the initial partial filing fee in this case. However, he is still obligated to pay the full filing fee pursuant to the statutory formula set forth in 28 U.S.C. § 1915(b)(2). *See id.* § 1915(b)(1).

Having determined that Plaintiff need not pay the initial partial filing fee, the Court next turns to screening his complaint. The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. *Id.* § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Gladney v. Pendelton Corr. Facility*, 302 F.3d 773, 774 (7th Cir. 2002). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327; *Gladney*, 302 F.3d at 774. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003) (citations omitted); *accord Paul v. Marberry*, 658 F.3d 702, 705 (7th Cir. 2011).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts, and his statement need only "'give the defendant fair notice of what the . . .claim is and the grounds

upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see Christopher v. Buss*, 384 F.3d 879, 881 (7th Cir. 2004). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Christopher*, 384 F.3d at 881.

In considering whether a complaint states a claim, courts should follow the principles set forth in *Twombly* by first "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. *Id.* If there are well-pleaded factual allegations, the Court must then "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The Court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Plaintiff's complaint concerns alleged medical mistreatment by Defendants, all prison officials at WSPF. (Docket #1).[1] On September 27, 2017, Plaintiff was seen by a doctor in the Health Services Unit ("HSU") at WSPF. *Id.* at 3. The doctor, identified as "M.D. Miller," prescribed Bentyl, the brand name for dicyclomine, to treat Plaintiff's chronic ulcerative colitis, which is a complication of Plaintiff's Crohn's disease. *Id.* His prescription for Excedrin to treat his chronic migraines was also increased. *Id.*

On October 10, 2017, Plaintiff received a package of medication labelled "dicyclomine." *Id.* Apparently, Dr. Miller never explained that dicyclomine is the generic name for Bentyl, and Plaintiff was confused as to whether this was the proper medication for him. *See id.* He asked the officer who delivered him the medication to take it back and verify its correctness. *Id.* The officer inquired with a nurse doing rounds in the housing unit that she would look into it, but Plaintiff says she never followed up with him. Plaintiff also says the officer never returned the medication to him, but he then contradictorily states that he "returned the questionable pills to the HSU" the next day along with a written request for the correct medication. *Id.*

Defendant Jane Doe, an HSU nurse, responded to Plaintiff's request. *Id.* at 4. She enclosed written materials explaining that Bentyl and dicyclomine are two words for the same drug. *Id.* However, she did not return the medication to Plaintiff. *Id.* Instead, she wrote to him and asked if

---

[1]Plaintiff attached to his complaint many pages of exhibits. *See* (Docket #1-2). The Court must ignore these documents, since a complaint must be judged solely on the allegations within its four corners. *Hill v. Trustees of Ind. Univ.*, 537 F.2d 248, 251 (7th Cir. 1976). Plaintiff has been warned of this many times in connection with his other cases pending in this branch of the Court, so it should come as no surprise here.

Plaintiff wanted to refuse the medication. *Id.* Plaintiff did not complete or return the refusal form provided. *Id.*

Plaintiff has submitted numerous requests for return of the Bentyl and alleges he has been refused by several nurses "on erroneous pretenses." *Id.* He has now gone without the medication for over two weeks. *Id.* Additionally, despite an order from Dr. Miller increasing the dosage of his Excedrin, the same nursing staff will not refill the medication per the new order. *Id.* Apparently, they erroneously claim that no increase was ever ordered. *Id.*

Plaintiff has written to Dr. Miller several times seeking his assistance in enforcing the medication orders, but Plaintiff claims that Defendant Beth Edge ("Edge"), another HSU nurse, intercepted the communications and answered them herself. *Id.* Plaintiff accuses her of lying about the Excedrin order being a renewal of the prior prescription rather than an increase. *Id.*

Plaintiff reports that he has now filed over seventy inmate complaints about these issues and has complained to the state nursing board. *Id.* He has been afforded no relief, which he attributes to refusing to abide by Dr. Miller's orders, as well as harassment and retaliation. *Id.* In particular, Plaintiff says that the inmate complaint examiner, Defendant Ellen Ray ("Ray") and the reviewing authority for the institution, Defendant Gary Boughton ("Boughton"), have ignored his inmate grievances and turned a blind eye to his distress. *Id.* at 4–5. This includes, for example, Ray's decision not to accept Plaintiff's grievances despite the existence of a prison policy requiring that grievances on health and safety issues be accepted at all times. *See id.* She also allegedly tampered with evidence Plaintiff submitted, but this allegation is not fleshed out with much specificity. *Id.*

Plaintiff's theory in this case is that Defendants have acted with deliberate indifference to his serious medical needs, in violation of the Eighth Amendment. *See id.* at 5–6. According to him, Defendants have intentionally denied and delayed needed treatment for his bowel conditions in direct contravention of the doctor's orders. *Id.* He adds that their actions were done in retaliation for his complaints about them through the prison grievance system and the state nursing board. *Id.* He requests an injunction against such conduct in the future, as well as a declaratory judgment and compensatory and punitive damages. *Id.* at 7.

Against the backdrop of the very low bar applied at screening, the Court finds that Plaintiff's claims may proceed. A claim of deliberate indifference to a serious medical need requires that (1) the plaintiff had an objectively serious medical condition, (2) the defendants knew of the condition and were deliberately indifferent to treating it, and (3) their indifference caused the plaintiff some injury. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). The deliberate indifference inquiry has two components. "The official must have subjective knowledge of the risk to the inmate's health, and the official also must disregard that risk." *Id.* Even if an official is aware of the risk to the inmate's health, "he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 843 (1994)). Negligence cannot support a claim of deliberate indifference, nor is medical malpractice a constitutional violation. *Estelle v. Gamble,* 429 U.S. 97, 105–06 (1976); *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011).

Here, Plaintiff's allegations, taken as true and generously construed, suffice to show that Defendants ignored or erroneously refused his numerous requests to receive needed medication for his serious bowel

conditions and migraines. This apparently caused both degradation of those conditions and unnecessary pain and discomfort. *See Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012). This is enough to proceed on an Eighth Amendment claim.

Moreover, the Court will permit claims to proceed against Ray and Boughton although such claims are normally not allowed. Usually those who review inmate complaints are not liable simply for denying a prisoner the relief he seeks. *See Ali v. West*, Case No. 16–CV–1518–JPS, 2017 WL 176304, at *5 (E.D. Wis. Jan. 17, 2017). However, they can be liable if ignoring the prisoner's complaints rises to the level of deliberate indifference to sufficiently serious medical needs. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Because Plaintiff alleges here that Ray and Boughton ignored–and even tampered with—a series of complaints about his ongoing medical mistreatment, the Court must allow this claim to proceed against them. Put differently, because these complaint reviewers had an opportunity to correct the alleged mistreatment, they can be liable for their failure to do so. *See Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005).

In addition to the deliberate indifference claim, the Court is obliged to permit Plaintiff to proceed on a claim of retaliation, in violation of the First Amendment, against the nurse Defendants. To succeed on this claim, Plaintiff must how that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the defendant's decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). It is not necessary that the speech in question relate to a matter of public concern. *Watkins v. Kasper*, 599 F.3d 791, 795 (7th Cir. 2010). A prison grievance

qualifies as protected speech, *see Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006), and given the low threshold of screening, the Court will assume that Plaintiff's complaints to the state nursing board count, too. Thus, against his allegations that the nurses at WSPF denied him important medical care because he complained about their conduct, the Court will allow this claim to proceed.

For the reasons stated above, Plaintiff shall be permitted to proceed on the following claims: (1) against all Defendants on a claim of deliberate indifference to his serious medical needs, in violation of the Eighth Amendment; and (2) against Defendants Jolina Waterman, Beth Edge, K. Running, M. Bartels, and Jane Does on a claim of retaliation, in violation of the First Amendment. 28 U.S.C. § 1915A(b).

In closing, the Court makes a final observation about a potential obstacle in this case: exhaustion of prison administrative remedies. The Prison Litigation Reform Act establishes that, prior to filing a lawsuit, a prisoner must exhaust "such administrative remedies as are available[.]" 42 U.S.C. § 1997e(a). To do so, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require," and he must do so precisely in accordance with those rules; substantial compliance does not satisfy the PLRA. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Exhaustion is a precondition to suit, and so a lawsuit must be dismissed even if the prisoner exhausts his administrative remedies during its pendency. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

The Wisconsin Department of Corrections maintains an Inmate Complaint Review System ("ICRS") to provide a forum for administrative complaints. Wis. Admin. Code § DOC 310.04. There are two steps inmates

must take to exhaust their administrative remedies under the ICRS. First, an inmate must file a complaint with the Institution Complaint Examiner ("ICE") within fourteen days of the events giving rise to the complaint. *Id.* §§ DOC 310.07(1), DOC 310.09(6). The ICE may reject a complaint or, before accepting it, can direct the inmate to "attempt to resolve the issue." *See id.* §§ DOC 310.08, DOC 310.09(4), DOC 310.11(5). If the complaint is rejected, the inmate may appeal the rejection to the appropriate reviewing authority. *Id.* § DOC 310.11(6). If the complaint is not rejected, the ICE issues a recommendation for disposing of the complaint, either dismissal or affirmance, to the reviewing authority. *Id.* §§ DOC 310.07(2), DOC 310.11.1 The reviewing authority may accept or reject the ICE's recommendation. *Id.* § DOC 310.07(3).

Second, if the ICE recommends dismissal and the reviewing authority accepts it, the inmate may appeal the decision to the Corrections Complaint Examiner ("CCE") within ten days. *Id.* §§ DOC 310.07(6), DOC 310.13. The CCE issues a recommendation to the Secretary of the Department of Corrections who may accept or reject it. *Id.* §§ DOC 310.07(7), DOC 310.13, DOC 310.14. Upon receiving the Secretary's decision, or after forty-five days from the date the Secretary received the recommendation, the inmate's administrative remedies are exhausted. *Id.* §§ DOC 310.07(7), DOC 310.14.

This case was filed on October 20, 2017, less than two weeks after the relevant events occurred. *See* (Docket #1). Because of this, and because of the typical time required to process an inmate grievance and all required appeals, the Court considers it highly unlikely that Plaintiff has properly and fully exhausted his administrative remedies with respect to the claims he raises in this case. However, the Court cannot dismiss a case for failure

to exhaust remedies on screening, since it is an affirmative defense to be proven by Defendants. *Westefer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005). Nevertheless, the Court would invite an early motion for summary judgment from Defendants on this issue to ensure that the Court adjudicates only those claims that are properly before it.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* (Docket #2) is **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to waive the initial partial filing fee in this case (Docket #7) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that, pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of Plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Defendants;

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, Defendants shall file a responsive pleading to the complaint within sixty (60) days of receiving electronic notice of this Order;

**IT IS FURTHER ORDERED** that the agency having custody of the prisoner shall collect from his institution trust account the $350.00 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Plaintiff is transferred to

another institution, county, state, or federal, the transferring institution shall forward a copy of this Order along with Plaintiff's remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Plaintiff is confined;

**IT IS FURTHER ORDERED** that, pursuant to the Prisoner E-Filing Program, Plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court.[2] If Plaintiff is no longer incarcerated at a Prisoner E-Filing institution, he will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

The Court further advises Plaintiff that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

---

[2] The Prisoner E-Filing Program is mandatory for all inmates of Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Dated at Milwaukee, Wisconsin, this 7th day of November, 2017.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge