IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MARK ANTHONY ADELL,

                    Plaintiff,                        OPINION AND ORDER

        v.                                            17-cv-877-wmc

GARY BOUGHTON, JOLINDA WATERMAN,
BETH EDGE, KRISTEN RUNNING,
MARY BARTELS, ELLEN RAY,
SANDRA MCARDLE, and JANE DOES,

                    Defendants.

While an inmate at Wisconsin Secure Program Facility ("WSPF"),[1] *pro se* plaintiff

Mark Adell alleges that: (1) defendants were deliberately indifferent to his serious medical

needs (migraine headaches and ulcerative colitis / mixed Crohn's disease), both by denying

treatment prescribed by his treating physician and by intercepting his written requests to

his treating physician; (2) defendants retaliated against him for complaining about his

treatment and seeking to enforce that doctor's orders; and (3) other defendants ignored

these abuses. After this case was screened and transferred from the Eastern District of

Wisconsin, plaintiff filed: an amended complaint (dkt. #9) and related motions (dkt.

##16, 19); a request to file a second amended complaint (dkt. ##22, 23); a motion to

strike defendants' answer and for a more definite statement (dkt. #18); a request for

assistance in recruiting counsel (dkt. ##24, 27); and a motion to transfer venue (dkt. #28).

After screening his second amended complaint as required by 28 U.S.C. § 1915A, Adell

will be allowed to proceed on his Eighth Amendment claims against all named defendants,

---

[1] Plaintiff now resides at Waupun Correctional Institution. (*See* dkt. #28.)

as well as First Amendment claims against some defendants.

## ALLEGATIONS OF FACT

### A. Parties

All named defendants work at WSPF. Plaintiff Adell was previously granted leave to proceed against Warden Gary Boughton, inmate complaint examiner Ellen Ray, and nurses Jolinda Waterman, Beth Edge, K. Running, M. Bartels, and Jane Does. (Screening Order (dkt. #8) 6-8.) Now, he seeks to add Sandra McArdle and Nurse R. Grackowski as defendants.

### B. Denied or Delayed Medication

On September 27, 2017, a non-defendant, Dr. Miller, examined Adell and adjusted his medications.[2] Dr. Miller prescribed Bentyl for Adell's incurable bowel disease and increased the dosage of Excedrin Migraine for his chronic migraine headaches. As summarized below, all of Adell's claims generally stem from allegations that defendants intentionally denied him these and other medications prescribed by Miller.

### 1. Bentyl

In an order dated September 27, 2017, Dr. Miller specified that the Bentyl was to be kept on Adell's person, meaning that it should not be controlled by prison staff. On

---

[2] Dr. Miller is referred to as "M.D. Miller" throughout plaintiff's second amended complaint.

October 10, 2017, Adell received two bubble packs of dicyclomine.[3]  Not knowing that dicyclomine is the generic version of the prescribed, brand-name drug, Bentyl, Adell returned the dicyclomine to the delivering correctional officer, believing it to be the wrong medication.  The correctional officer said he would have the health services unit ("HSU") staff verify the medication.  After returning the medication, the correctional officer further informed Adell that the nurse responsible for medication rounds would look into it.

The following day, with no word from the nurse, Adell asked for the correct medication and for information about Bentyl.  He then learned that Bentyl and dicyclomine are the same.  However, the dicyclomine was not returned to him by Nurse Jane Doe.  Instead, Nurse Doe sent him a refusal form to confirm that he wanted to refuse the dicyclomine.  Adell did not complete this form, but instead submitted refill requests to HSU seeking return of the dicyclomine.  Nevertheless, defendants Mary Bartels, Jane Doe, and Kristen Running refused to return it.

After Adell sought the return of his prescription, defendants Jolinda Waterman and her staff -- including Nurse Doe -- placed the Bentyl/dicyclomine under staff control, refusing Adell the benefit of keeping it on his person as allegedly directed by Dr. Miller.  This change in protocol was apparently reduced to a written order on November 22, 2017, and signed by defendant Sandra McArdle.  Adell alleges that the order was motivated by his reporting HSU nurses to the state nursing board and complaining about them through

---

[3] Throughout plaintiff's second amended complaint, he refers to this medication as "diclyclomine." The correct spelling appears to be "dicyclomine."  *See Dicyclomine*, MedlinePlus (Oct. 22, 2018), https://medlineplus.gov/druginfo/meds/a684007.html.  Accordingly, the court will adopt this spelling barring correction by the parties.

the inmate complaint system.  As evidence of this retaliatory motive, Adell alleges that medications are only placed under staff control when at risk for being abused.[4]  Adell further alleges that Sandra McArdle lied to investigating staff when she said that Bentyl was "a medication that has a potential for abuse and can be misused," as demonstrated by the fact that he had previously possessed the medication without restriction or incident. Even more specifically, Adell alleges that McArdle restricted his access to the Bentyl to "teach [him] a lesson about complaining about tardy refill requests."  (Second Amend. Compl. (dkt. #23) ¶ 57.)  Finally, Adell alleges that defendants Boughton, Ray and Waterman "rebuffed" his attempts to remove the staff restriction in retaliation for all of the grievances he had filed.  (*Id.* ¶ 55.)

Adell saw Dr. Miller again on December 21, 2017, and informed him of the modification to his Bentyl prescription.  Dr. Miller again wrote the prescription for the Bentyl to be controlled by Adell, but defendants continued to keep dicyclomine under staff control, which plaintiff alleges "subjected [him] to close and personal observation by staff anytime he wanted to take the Bentyl" and that this was defendants' intent.  (*Id.* ¶ 54.) Only after Adell filed a second inmate complaint did defendant Waterman remove this restriction on January 26, 2018.

---

[4] Although premature for consideration at this stage, dicyclomine does not appear to be a Schedule I drug, and considered relatively benign, but is apparently at risk of abuse in a prison setting.  *See* Jeffrey E. Keller, *Medications at High Risk for Diversion and Abuse in Correctional Facilities*, Jail Medicine, http://www.jailmedicine.com/medications-at-high-risk-for-diversion-and-abuse-in-correctional-facilities/ (last visited March 31, 2019).

## 2. Excedrin

On September 27, 2017, Adell also requested an increase to his migraine medications. Apparently in the same order confirming Adell should be allowed to keep Bentyl on his person, Dr. Miller granted that request, increasing the dosage from 24 tabs to 90 tabs of Excedrin Migraine per month.[5] Specifically, the order detailed that Adell should take "1 tab - 3x daily as needed." (Ex. B. (dkt. #9-1) 4.) Defendants Bartels, Doe, Running and Waterman allegedly refused to refill this prescription. According to Adell, defendants' refusal violated Department of Adult Institutions policy, which requires medical staff to refill prescriptions seven days before an inmate runs out.

During a medical file review in WSPF's HSU on October 26, 2017, Adell further discovered that defendant Waterman had altered Dr. Miller's September 27 order to add "limit #24/month."[6] This addition not only caused Adell's refill requests to be denied, but allegedly misled inmate complaint office investigators. When plaintiff sought to correct the medical records in April 2018, however, Waterman claimed no falsification had occurred; instead, she described the addition as a "late entry." Adell filed a second request to correct his medical records, but Waterman again refused to modify the records or to acknowledge the falsifications.

On November 24, 2017, Adell sought a refill of his Excedrin. Defendant

---

[5] Relatedly, plaintiff also contends that this prescription meant that he should be able to "obtain a refill any time during each month as long as he does not exceed the 90 monthly tab limit during any month," instead of receiving 90 tabs every 30 days. (Second Amend. Compl. (dkt. #23) ¶ 44 n.3.)

[6] Adell obtained a copy of Miller's original order on October 5, 2017.

Grackowski denied the request, claiming his request was "too early." The next day, Adell refiled the request. This time, Grackowski approved the request, but only sent 60 tablets. Grackowski did not document how many tablets were provided, so Adell asked the prison guard who delivered the medication to indicate the quantity. On November 27, 2017, Adell submitted two additional refill requests for the missing 30 pills. Grackowski denied both, informing Adell that it was too soon to request a refill and that he should resubmit after December 27, 2017.[7] The next day, Adell again submitted a refill request for the missing Excedrin tabs and again the request was denied. Defendants Boughton, Ray and Waterman allegedly ignored his complaints about these denials as well.

Adell alleges that he also repeatedly asked Dr. Miller to intervene and enforce his orders as written, but that defendant Beth Edge intercepted his written requests and answered them herself. In one of those responses regarding the Excedrin, Edge wrote that the prescription had been "renewed, not increased." Adell alleges that Edge did this to protect defendant McArdle. Likewise, plaintiff alleges that Edge intercepted his written communications to HSU Manager Waterman. Adell further alleges that defendant Edge prevented him from obtaining the identities of the nurses involved in denying his refill requests.

Relatedly, Adell alleges that defendants Bartels, Edge, Grackowski, Running, Waterman, and Doe falsified entries in the medication disbursement tracking system to reflect a greater number of Excedrin Migraine tablets than he was actually given so that any refill request would be denied, including twice to reflect falsely that he had exceeded

---

[7] Grackowski also indicated that the medication could not be refilled.

his monthly allotment.  He explains that these defendants would either falsify or vaguely complete the refill receipts.  Adell also alleges that defendants Edge, Grackowski, Running, Waterman and Roe provided him with the wrong migraine medication, forcing him to return the medication and delaying his treatment.  Finally, Adell alleges that Boughton and Ray ignored these actions, with his health in the balance.

### 3. Pedialyte

At the December 21, 2017, appointment with Dr. Miller, Adell was next prescribed Pedialyte, an electrolyte mix to address severe dehydration caused by a flareup of his bowel disease and resulting in "around the clock diarrhea, extreme dehydration, weakness, shortness of breath, migraine headaches, nausea and . . . [a] loss [of] 7 pounds in a matter of a few days."  (Second Amend. Compl. (dkt. #23) 10 n.4.)  Despite these obvious symptoms, Adell alleges that this prescription was also ignored for twelve days, and he only received the Pedialyte some 28 or 29 days after it was prescribed.

### 4. Prednisone

Last, on January 11, 2018, Dr. Miller prescribed prednisone.  However, the written prescription and that documented in the progress notes differ.  This, Adell hypothesizes, "created a treatment void [that] resulted in plaintiff not receiving the prescribed prednisone and treatment expressed in the said progress notes."  (*Id.* ¶ 70.)  After Adell identified the inconsistency in the prescribed dosage, he allegedly tried to contact Dr. Miller in writing, but defendant Edge intercepted that communication and provided her own response.  At the same time, Edge allegedly claimed to have forwarded the

communications on to Miller. However, when Adell tried to follow up, he was informed that Miller no longer worked at WSPF. Following Dr. Miller's departure, defendant McArdle was the only treatment provider licensed to provide advanced care to the 500 patients at WSPF. According to Adell, this provided defendants with "an excuse to attempt to force plaintiff to be seen by defendant McArdle, knowing full well in advance that plaintiff will not consent to being treated by her." (*Id*. ¶ 78.) Indeed, Adell explains, defendants knew the physician-patient relationship between McArdle and he was "irretrievably broken." (*Id*. ¶ 79.) Accordingly, he alleges that this was an intentional conspiracy to deprive him of adequate medical care and, regardless, he was left without adequate care. Finally, his prednisone was stopped suddenly after only ten days, instead of the tapering off process required with prednisone use.

## C. Retaliation

During the course of these delays in providing and outright denials of prescribed medications, Adell filed over 70 inmate complaints, as well as complaints with the state nursing board, against defendants Edge, Running, Waterman, and other HSU staff. These complaints were based on "abuse, refusing to abide M.D. orders, harassment, retaliation and improper denials of refills." (*Id.* ¶ 17.) More generally, Adell alleges that "[a]ll of the defendants acted conspiratorially to deny plaintiff refills of Excedrin in retaliation for plaintiff's prolific Inmate Complaints filed against them." (*Id.* ¶ 36.)

For example, in response to one of Adell's inmate complaints, defendant Sandra McArdle was directed to distinguish between two of Adell's headache medications. In response, McArdle discontinued one of them, claiming that it increased Adell's headaches,

but failed to even examine Adell before coming to that conclusion. As a result, Adell was left with only the originally prescribed 24 tablets of Excedrin Migraine per month, which were inadequate to address his migraines. Adell alleges this discontinuation was also part of defendants' retaliation for his filing legitimate inmate complaints in the first place.

## D. Inmate Complaint Processing

Adell next alleges that he sought to use the inmate complaint system to address his ongoing concerns about his healthcare, or lack of it, but defendants Ellen Ray and Gary Boughton have ignored his complaints. Specifically, inmate complaint examiner Ray has returned Adell's complaints to him, without processing them, even though she is required to accept all inmate complaints alleging health and safety issues. Further, Adell contends, Ray tampered with or refused to scan the evidence he attached to his inmate complaints, so that the reviewing authority would not see all the evidence.

Adell also complains that the failure of higher ranking prison staff to punish subordinates directly involved in his improper medical treatment has "embolden[ed] them to continue." (*Id.* ¶¶ 48a, 48b, 59.) Likewise, Adell generally complains that the defendants "foster[] a longstanding personality conflict that impedes [his] ability to obtain adequate medical care at/from the[] HSU," such that their "intent is to harass and cause plaintiff malicious injury." (*Id.* ¶¶ 63-64.)

## E. Additional Allegations

Adell's second amended complaints also adds vague allegations to demonstrate "the culpable state of mind and illegal motives of Defendant Waterman" and others, as well as

demonstrate "the large scale of incompetence, recklessness, and deliberate indifference persistently present" at the HSU. (*Id.* ¶¶ 86, 95.) Those facts include: (1) the results of a December 5, 2016, appointment with Dr. Jerry C. Evans, a gastrointestinal specialist; (2) his disagreement with Dr. Evans' diagnosis of a "severe personality disorder," based in part on plaintiff's refusal to answer some questions directly (*id.* ¶¶ 80-83); (3) defendant Waterman's refusal to redact Dr. Evans's diagnoses (*id.* ¶¶ 84-86); and (4) an unread "mandatory" tuberculosis test in November 2017 (*id.* ¶¶ 87-94).

## OPINION

### I. Renewed Screening

Before transferring this case to this district, Eastern District of Wisconsin Judge Stadtmueller already found that plaintiff sufficiently alleged claims for deliberate indifference to a serious medical need and retaliation. Specifically, he held that "Plaintiff's allegations, taken as true and generously construed, suffice to show that Defendants ignored or erroneously refused his numerous requests to receive needed medication for his serious bowel conditions and migraines," which "apparently caused both degradation of those conditions and unnecessary pain and discomfort." (Screening Order (dkt. #8) 6-7 (citation omitted).) Judge Stadtmueller also granted plaintiff leave to proceed against defendants Ray and Boughton "because these complaint reviewers had an opportunity to correct the alleged mistreatment" and "can be liable for their failure to do so." (*Id.* at 7 (citation omitted).) Further, he granted plaintiff leave to proceed on his retaliation claim against the nurse defendants (Waterman, Edge, Running, Bartels, Grackowski and Doe),

since plaintiff alleged that "the nurses at WSPF denied him important medical care because he complained about their conduct." (*Id.* at 8.)

That analysis is the law of the case, and holds just as true for the two new defendants (McArdle and Grackowski), as well as additional allegations of denials or delays of medications.[8] *First*, plaintiff may proceed on his Eighth Amendment claims of deliberate indifference to a serious medical need against all defendants. To state a claim for deliberate indifference, a plaintiff must allege three elements: (1) the plaintiff "had an objectively serious medical condition"; (2) "the defendants knew of the condition and were deliberately indifferent to treating [it]"; and (3) their indifference caused the plaintiff "some injury." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). As previously held, plaintiff's ulcerative colitis and migraines constitute serious medical needs. Moreover, Judge Stadtmueller previously found plaintiff adequately alleged that defendants caused both a worsening of his condition and unnecessary suffering by: (1) ignoring or improperly refusing his requests for prescribed medications to treat his serious bowel conditions and migraines; (2) failing to respond adequately to his complaints about the administration of his prescribed medication; and (3) actively preventing him from communicating with his doctor about the deficiencies in his medications. As alleged, new defendants, Grackowski and McArdle, certainly fall neatly into the first category: McArdle for improperly changing

---

[8] Except perhaps to bolster a possible claim for punitive damages, the court does *not* understand plaintiff's "additional allegations" detailed above to raise new causes of action against any defendant, but rather were included by plaintiff as further support for plaintiff's claims of defendants' deliberate indifference to his serious medical needs. If the court is incorrect, plaintiff should promptly seek leave to amend his complaint to expressly identify any new claims or defendants. *See* Fed. R. Civ. P. 18(a).

Dr. Miller's order and denying plaintiff control of his Bentyl prescription; and Grackowski for improperly denying his refill requests,[9] intentionally giving him the wrong medication, and falsifying refill entries to deny him access to prescribed medications.[10]

While Adell's allegations against the defendants pass muster under the court's lower standard for screening, he should be aware that to be successful on his claim, he will have to present admissible evidence permitting a reasonable trier of fact to conclude that defendants acted with deliberate indifference to his serious medical need, which is a high standard. Inadvertent error, negligence or gross negligence are insufficient grounds for invoking the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996). In particular, it will be Adell's burden to prove: (1) his medical conditions constituted serious medical needs; and (2) perhaps even more daunting, that the defendants knew his condition was serious and deliberately ignored his need for medication. Both elements may well require Adell to provide credible, expert testimony from a physician in the face of medical evidence to the contrary.

*Second*, plaintiff may proceed on his First Amendment retaliation claims against defendants Bartels, Edge, McArdle, Running, Waterman, and Doe. To state this type of claim, a plaintiff must allege three elements: (1) an activity protected by the First

---

[9] The court notes that plaintiff may have difficulty proving deliberate indifference against Nurse Grackowski because she is entitled to defer to a physician's treatment decisions, unless those decisions are clearly wrong or inappropriate. *See Halloway v. Delaware Cty. Sheriff's Office*, 700 F.3d 1063, 1075 (7th Cir. 2012) ("[N]urses may generally defer to instructions given by physicians" unless "it is apparent that the physician's order will likely harm the patient" (citation omitted)).

[10] To the extent that plaintiff is complaining that now he can only see defendant McArdle for treatment, that in and of itself is not the basis for a deliberate indifference claim. *See Hayes v. Smith*, No. CV04-620-S-EJL, 2007 WL 2413023, at *6 (D. Idaho Aug. 21, 2007) ("Plaintiff is not entitled to select the medical care provider of his choice in jail." (internal citations omitted)).

Amendment; (2) a deprivation that would likely deter future First Amendment activity; and (3) the First Amendment activity was "at least a motivating factor" in the defendant's decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). As explained previously, plaintiff alleges that he was denied access to his prescribed medications because of his complaints about the conduct of HSU staff through the inmate complaint system and to the state nursing board. As to newly added defendant, McArdle, specifically, plaintiff alleges that she changed Dr. Miller's order regarding his access to the Bentyl *because* he had complained about delays in having his medication refilled. Plaintiff's grievances and complaints are clearly protected activity, and it is reasonable to infer that the alleged handling of his medical care would deter a reasonable person from filing future grievances. Here, he has at least pleaded sufficient facts to give rise to an inference that his protected activity motivated McArdle's mistreatment of him.

While the court will, therefore, permit plaintiff to proceed with his First Amendment retaliation claim against defendants Bartels, Edge, McArdle, Running, Waterman, and Doe, he should bear in mind that this claim is also far easier to plead, than to clear the factual and legal hurdles down the road. For example, to succeed at the summary judgment or trial stage, plaintiff will need to submit *specific* evidence that the defendants' decisions were, in fact, motivated by his complaints and grievances, and the mere sequence of events is insufficient proof of retaliation. *See Springer v. Durflinger*, 518 F.3d 479, 485 (7th Cir. 2008) ("[A]s we have stated on many occasions, timing alone is insufficient to establish a genuine issue of material fact to support a retaliation claim." (internal quotation marks omitted)).

Finally, as to both his deliberate indifference and retaliation claims, there is no longer *any* excuse for plaintiff's failure to have identified by name any defendant "JANE DOES," unless defendants refuse to cooperate. Therefore, plaintiff may have forty-five (45) days to disclose any "DOES" by name. Otherwise, those unnamed defendants shall be dismissed from this case.

## II. Motion for Assistance in Recruiting Counsel

Next, plaintiff seeks assistance in recruiting counsel, contending that: (1) this case is complex; (2) he would be unable to counter any defense expert witnesses because he could not obtain his own expert or understand the necessary "scientific documentation"; (3) he tried but failed to find pro bono representation; and (4) he is not capable of representing himself. (Mot. Appointment of Counsel (dkt. #27) 1-2.) As plaintiff recognizes, civil litigants do not have a right to the appointment of counsel, and the court must exercise discretion in recruiting counsel. (*Id.* at 2.) While plaintiff contends that he cannot represent himself, the court is so far not persuaded that the complexity of this case exceeds his ability to litigate it at this stage. *See Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007). Indeed, plaintiff's filings thus far in this lawsuit are not only understandable, but reflect a good understanding of the relevant legal standards and materials.

Certainly, pro bono counsel may be able to present plaintiff's case more effectively than plaintiff, but "if that were the test, district judges would be required to recruit counsel for every indigent litigant." *Id.* at 655 (quoting *Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006)) (internal quotation marks omitted). Unfortunately, this court receives many more requests for counsel than the small pool of available volunteers can

accommodate.  Based on all the facts and circumstances before the court at present, neither the case itself nor plaintiff's circumstances suggest that he is unable to proceed on his own, particularly when the disputes seem to be centered around defendants' failure to carry out straightforward medical advice, rather than a dispute over the soundness of that advice. Accordingly, the court will deny his request at this time without prejudice.  Plaintiff may renew his motion later should he discover that the complexities of this case truly exceed his abilities.  If he does renew this motion, plaintiff should provide the court with specific reasons why he is unable to continue to litigate this matter on his own.

## III.  Motion to Transfer Venue

Finally, plaintiff seeks to transfer this case back to the Eastern District of Wisconsin. (Mot. Transfer (dkt. #28) 1.)  While plaintiff contends that venue is now more proper in the Eastern District because he resides there, it seems his true motivation is his desire for the lawsuit to progress.  (*Id.*)  Neither reason warrants a transfer.

Certainly plaintiff's displeasure at waiting over a year for this second screening is understandable, but it is not without some cause given plaintiff's repeated motion practice. Regardless, venue in this district is proper, as Judge Stadtmueller previously explained, because "[e]ach named Defendant is an employee at WSPF" and "WSPF is located within the territorial jurisdiction of the U.S. District Court for the Western District of Wisconsin."  (Transfer Order (dkt. #10) 1.)  The newly added defendants are also employees at WSPF.  Neither plaintiff's new location at Waupun nor his desire for the case to progress more quickly alters the venue analysis.  Finally, as a practical matter, once screened, cases are resolved far quicker on average in this district than in the Eastern

District.  Accordingly, plaintiff's motion to transfer is denied.

ORDER

IT IS ORDERED that:

1) Plaintiff's motion to file a second amended complaint (dkt. #22) is GRANTED.

2) Plaintiff may proceed on claims of:  (a) Eighth Amendment deliberate indifference to a serious medical need against all named defendants; and (b) First Amendment retaliation claims against defendants Bartels, Edge, McArdle, Running, Waterman, and Doe.  Relatedly, plaintiff may have forty-five (45) days from this order to identify by name any remaining defendant "JANE DOE" or they will be dismissed from this case.  Should plaintiff timely disclose the name(s) of such defendant(s), the clerk's office is directed to amend the case caption accordingly.

3) Plaintiff's motions for screening of his amended complaint (dkt. #19) and an order requesting defendants to answer (dkt. #16) are DENIED AS MOOT.

4) Plaintiff's motion to strike the defendants' answer and for a more definite statement (dkt. #18) is DENIED AS MOOT.

5) Plaintiff's motion for assistance recruiting counsel (dkt. ##24, 27) is DENIED without prejudice.

6) Plaintiff's motion to transfer venue (dkt. #28) is DENIED.

7) Pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's second amended complaint and this order are being sent today to the Attorney General for service on the additional state defendants.  Under the agreement, the Department of Justice may have 60 days from the date of the Notice of Electronic Filing in this order to answer or otherwise plead to plaintiff's complaint if it accepts service for the defendants, but should answer, move or otherwise respond as to all other defendants within fourteen (14) days of this order.

8) Plaintiff is again reminded that should be he transferred or released while this case is pending, it is his obligation to inform the court of his new address.  If he

fails to do this and defense counsel or the court is unable to locate him, his case may be dismissed for failure to prosecute.

9) Within thirty (30) days, the clerk of court shall set a Preliminary Pretrial Conference in this matter to establish a trial date and all related deadlines in this case.

Entered this 31st day of March, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge